IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFRED COSTANZO and
MELANIE COSTANZO,

   Plaintiffs,

v.                 CV 13-1199 WPL/RHS

PROPERTY & CASUALTY INSURANCE
COMPANY OF HARTFORD,

   Defendant.

**MEMORANDUM OPINION AND ORDER**

   This matter is before me on Hartford's ("Hartford") Motion for Summary Judgment on Plaintiffs' Statutory Claims. (Doc. 34.) Hartford argues that it is entitled to summary judgment on Alfred and Melanie Costanzo's ("the Costanzos") claims brought under the New Mexico Unfair Insurance Practices Act ("UIPA"), N.M. STAT. ANN. § 59A-16-20(B), (C), (E), (G) (2014) and the New Mexico Unfair Practices Act ("UPA"), N.M. STAT. ANN. § 57-12-2D(15), (17) (2014). The Costanzos filed a response (Doc. 38), and Hartford filed a reply (Doc. 43). Based on a review of the briefing, the record, and the relevant law, I grant in part and deny in part Hartford's motion.

**FACTUAL & PROCEDURAL BACKGROUND**

   The factual and procedural background found in the record and all reasonable inferences therefrom are presented in the light most favorable to the Costanzos. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Hartford issued a homeowners insurance policy, No. 55 RBC358006, effective September 1, 2011, to September 1, 2012, for the house

located at 242 Vermont St. NE, Albuquerque, NM 87108. The Costanzos had sold the property to Theresa K. Hamill and James P. Hamill ("the Hamills") in 1998. The Costanzos financed the sale and retained a purchase money mortgage on the property. The named insureds on the policy were the Hamills. The Costanzos were not involved in the purchase of the policy and did not know how long the policy had been in place. They knew only that Harford was the insurer, based on oral assertions by James Hamill. The Costanzos claim that they were mortgagees listed in the policy through their escrow agent, Westar Escrow, and were thus additional insureds under the policy.

On or about December 27, 2011, a fire occurred in the house, causing damage to the property. Prior to the fire, the Costanzos had no contact with Hartford regarding the property. The Costanzos do not dispute Hartford's assertion that Hartford assessed the damages caused by the fire and made a payment to the Hamills for said damages. The Hamills did not repair the home and instead moved out. The Hamills defaulted on their mortgage payments, and the Costanzos later foreclosed on the mortgage. The Costanzos are the current owners of the property.

The Costanzos contend that Hartford exercised bad faith by failing and refusing to take all steps necessary to repair the damage from the fire and to meet its obligations under the policy. Furthermore, the Costanzos allege that because of Hartford's failure to promptly repair the fire damage, the property suffered extensive additional damages such that the property is currently uninhabitable and a total loss. Given such damages, the Costanzos assert that Hartford's payment offers have been unreasonable.

The Costanzos raise four claims for relief in this case. First, they state that Hartford's failure and refusal to take all steps necessary to repair the fire damage and to meet its policy

obligations violated the New Mexico Unfair Insurance Practices Act ("UIPA"), N.M. STAT. ANN. § 59A-16-20(B), (C), (E), (G). Second, the Costanzos contend that they suffered damages as a result of breach of contract and other improper conduct. Third, the Costanzos appear to make a bad faith claim for a knowing and willful unfair trade practice. Finally, the Costanzos allege that Hartford's actions violated the New Mexico Unfair Practices Act ("UPA"), N.M. STAT. ANN. § 57-12-2D(15), (17). It is undisputed that the only evidence upon which the Costanzos rely in support of their UPA claim is Hartford's alleged failure to repair the property after the fire and communication between the Costanzos and Hartford after the filing of an insurance claim.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears "the initial burden of showing that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz*, 221 F.3d at 1164. In a case such as this, where the

burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted).

## DISCUSSION

**I.     UIPA Claim**

Hartford argues that the Costanzos have no legal basis upon which to bring a claim under the UIPA because the Costanzos are not "insureds" under the statute. All four subsections of the UIPA cited by the Costanzos as subject to violation by Hartford apply to those who are "insured."[1] The statute, however, does not define "insured." The Costanzos counter that they are insureds under the Hartford policy, or that there is at least a genuine issue of material fact as to whether they are insureds. They cite to the Mortgage Clause in the policy, which states, "If a mortgagee is named in this policy, any loss payable under Coverage A or B [which includes fire insurance coverage] will be paid to the mortgagee and [the Hamills], as interests appear." (Doc. 48 Ex. 1 at 64.) Next, the Costanzos cite to the Declaration Page of the policy, which includes West Star Escrow as the sole mortgagee. (*Id.* at 3.) They state that West Star Escrow was merely the escrow agent for the Costanzos as mortgagees.

---

[1] The Costanzos allege that Hartford engaged in the following unfair and deceptive practices: "failing to acknowledge and act reasonably promptly upon communications with respect to claims from insureds arising under policies," N.M. STAT. ANN. § 59A-16-20(B); "failing to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims arising under policies," *id.* § 59A-16-20(C); "not attempting in good faith to effectuate prompt, fair and equitable settlements of an insured's claims in which liability has become reasonably clear," *id.* § 59A-16-20(E); and "compelling insureds to institute litigation to recover amounts due under policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds when such insureds have made claims for amounts reasonably similar to amounts ultimately recovered," *id.* § 59A-16-20(G).

An examination of the Mortgage Clause in the policy and related case law sheds light on whether the Costanzos are insureds who may sue under the UIPA. In addition to the Mortgage Clause provision cited by the Costanzos, subsequent provisions in the policy are also relevant to determining the rights and attendant responsibilities of a mortgagee. The policy states,

> If we deny [the Hamills'] claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee: a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware; b. Pays any premium due under this policy on demand if [the Hamills] have neglected to pay the premium; and c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of [the Hamills'] failure to do so. . . . If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

(*Id.* at 64.)

There are two general types of mortgage clauses: simple mortgage clauses and standard mortgage clauses. A simple mortgage clause typically includes the language "as its interests may appear," and the mortgagee is treated only as a loss payee. *See Florists' Mut. Ins. Co. v. Agstar of New Mexico, Inc.*, No. CIV. 03-1164 JBLFG, 2005 WL 3664325, at *5 (D.N.M. Nov. 11, 2005) (unpublished). A loss payee is subject to any defenses the insurer may have against the mortgagor. *Id.* (citing *In re Tower Air, Inc.*, 397 F.3d 191, 203 (3d Cir. 2005)). The mortgagee becomes a mere appointee of the insurance fund, unable to recover anything greater than that to which the mortgagor is entitled. *Ingersoll-Rand Fin. Corp. v. Emp'rs Ins. Of Wausau*, 771 F.2d 910, 913 (5th Cir. 1985).

In contrast, a standard mortgage clause creates a mortgagee payee and "is an independent and separate contract between the mortgagee and the insurance company." *Florists' Mut.*, 2005 WL 3664325, at *5 (citing *Nassar v. Utah Mortg. & Loan Corp.*, 671 P.2d 667, 670 (N.M. Ct. App. 1983)); *see also Ingersoll-Rand*, 771 F.2d at 913 ("There are accordingly in substance two contracts of insurance, the one with the mortgagee, and the other with the mortgagor."). The

mortgage clause itself defines the scope of the contract between the insurer and the mortgagee. *St. Paul Fire & Marine Ins. Co. v. Whitney Holding Corp.*, No. CIV.A. 04-3492, 2006 WL 3627105, at *2 (E.D. La. Feb. 15, 2006) (unpublished). A standard mortgage clause can typically be identified because it includes a provision stating that an "act or neglect" by the mortgagor does not affect the rights of the mortgagee payee. *Florists' Mut.*, 2005 WL 3664325, at *5 (citing *Fulwiler v. Traders & Gen. Ins. Co.*, 285 P.2d 140, 143 (N.M. 1955)). That is, "[t]he mortgagee payee is treated just as if he or she had applied for the insurance entirely independently of the mortgagor." *Id.* (citing *In re Tower Air*, 397 F.3d at 203). As a result, a standard mortgage clause "gives the mortgagee an insured interest that the insured does not have." *Id.* (citing *United States v. Commercial Union Ins. Co.*, 821 F.2d 164, 166 (2d Cir. 1987)); *see also St. Paul Fire*, 2006 WL 3627105, at *4 ("[T]he mortgage clause clearly give[s] [the mortgagee] some rights as an insured.").

Sometimes mortgage clauses stray from the unique phraseology often associated with either a simple or standard mortgage clause. In *Fin-Ag, Inc. v. Nau Country Ins. Co.*, the mortgage clause used the phrase "as his or her interest may appear," typical simple mortgage clause language. No. CIV. 08-4141-KES, 2009 WL 1850334, at *4 (D.S.D. June 26, 2009) (unpublished). The mortgage clause did not include language indicating that the act or neglect of the mortgagor would not affect the rights of a mortgagee, typical standard mortgage clause language. *Id.* at *5. Nonetheless, the court found that the clause was a standard mortgage clause because the clause contained additional language that appeared to confer rights on the mortgagee beyond those accorded under a simple mortgage clause. *See id.* at 5-6. In particular, the court noted the mortgage clause's inclusion of the following provisions:

> denial of the insured's claim 'does not apply to a valid claim of the mortgagee secured party' if the mortgagee notifies [the insurer] of (among other things) a

>'substantial change in risk of which the mortgagee . . . became aware,' pays the premium due if insured fails to do so, and submits a proof of loss within 60 days. The policy also states that upon [the insurer's] cancellation or nonrenewal of the policy, [the insurer] will notify the mortgagee at least ten days before the date such action takes effect.

*Id.* at *5. The court stated that in an unclear case, a mortgage clause should be construed against the drafter of the policy and treated as a standard, rather than simple, mortgage clause. *Id.* at *6.

In *Westhaven Grp., LLC v. Auto-Owners Ins. Co.*, the court found that language similar to that in *Fin-Ag* constituted a standard mortgage clause. No. 3:05 CV 7350, 2006 WL 2728649, at *2-3 (N.D. Ohio Sept. 22, 2006) (unpublished). The court found that it would "elevate form over substance" if it were to determine that a mortgage clause was not a standard mortgage clause because it did not include specific language about the acts or omissions of mortgagors not serving to invalidate a mortgagee's claim. *Id.* at *2 (citing *Nationwide Mut. Ins. Co. v. Hunt*, 488 S.E.2d 339, 343 (S.C. 1997)); *see also Home Sav. of Am., F.S.B. v. Cont'l Ins. Co.*, 104 Cal. Reptr. 2d 790, 798 (Cal. Ct. App. 2001) ("[W]e reject [the insurer's] attempts to distinguish . . . cases based on a minor difference in language found in a single sentence in both policies.").

The Hartford policy at issue in this case contained essentially the same language as that in *Fin-Ag*: an "as interests may appear" phrase, with the addition of substantively identical rights and responsibilities for the mortgagee. I therefore conclude that the mortgage clause applicable to any mortgagees of the subject property is a standard mortgage clause, with attendant contractual rights as insureds within the scope of the mortgage clause. The mortgagee information listed on the Declaration Page of the instant policy includes a loan number, the name West Star Escrow, and a P.O. Box address. The loan number on the Declaration Page matches the loan number on the payment history pages provided by the Costanzos, and each payment history page also reads "Hamill/Costanzo" at the top of the page. (*See* Doc. 38-2; Doc. 48-1 at

7

3.) Any investigation into the escrow account number would reveal the Costanzos as the mortgagees on the policy. I therefore find that Hartford's argument that the Costanzos do not have a right to bring a claim under the UIPA because they are not insureds to be unpersuasive. I deny summary judgment as to the UIPA claim.

### II. UPA Claim

Hartford argues that it is entitled to summary judgment on the Costanzos' UPA claim because the Costanzos have failed to demonstrate the threshold elements under the statute. In particular, Hartford contends that the Costanzos have failed to show that Hartford made any representations to the Costanzos "in connection with the sale, lease, rental, or loan of goods or services in the regular course of [Hartford]'s business." *See* N.M. STAT. ANN. § 57-12-2D. It is undisputed that the only evidence upon which the Costanzos rely to support their UPA claim is Hartford's purported failure to repair the property after the fire and communications between the Costanzos and Hartford subsequent to the Costanzos' claim filing. (*See* Doc. 34 at 4; Doc. 38 at 2.) Further, the Costanzos admit that they were not involved in the purchase of the policy, did not know when the policy was put in place, and had no communication with Hartford until after the fire. (*See* Doc. 34 at 4; Doc. 38 at 2.) However, the Costanzos respond that one of the listed "unfair or deceptive trade practice[s]" under the UPA includes "failing to deliver the quality or quantity of goods or services contracted for," *see* N.M. STAT. ANN. § 57-12-2D(17), suggesting that a UPA claim can be brought with respect to post-contract dealings between the parties and not only as to pre-contract dealings.

> Three elements are required to state a claim under the UPA:
>
> (1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's

business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.

*Lohman v. Daimler-Chrysler Corp.*, 166 P.3d 1091, 1093 (N.M. Ct. App. 2007) (citing N.M. STAT. ANN. § 57-12-2D; *Stevenson v. Louis Dreyfus Corp.*, 811 P.2d 1308, 1311 (N.M. 1991)). That is, the UPA defines an "unfair or deceptive trade practice" as requiring the three elements outlined above and then lists eighteen examples of such unfair or deceptive trade practices. *See* N.M. STAT. ANN. § 57-12-2D(1)-(18). The three required elements are joined to the eighteen examples by the phrase "and includes: . . . ."[2]

The Supreme Court of New Mexico has found that the "and" conjunction in the UPA means that the three elements listed above "must be present in the examples delineated" in the subsection. *Stevenson*, 811 P.2d at 1311. *Stevenson* specifically cites to another case—*Ashlock v. Sunwest Bank of Roswell*, *N.A.*—in which the claim alleged under the UPA was the failure to deliver the quality or quantity of goods or services contracted for. 753 P.2d 346 (N.M. 1988). In *Ashlock*, the court stated that the preliminary elements must be established in order to invoke the UPA. *Stevenson*, 811 P.2d at 1311 (citing *Ashlock*, 753 P.2d at 347). The court found in *Stevenson* that the plaintiff had never presented any evidence that the defendant "knowingly made any false or misleading statement of any kind in connection with the negotiation or the oral

---

[2] Part D of the statute preceding the listing of eighteen examples reads in full as follows:

"unfair or deceptive trade practice" means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person and includes:

N.M. STAT. ANN. § 57-12-2D.

agreement." *Id.* at 1312. Therefore, the court reversed the denial of a directed verdict in defendant's favor. *Id.*

The Costanzos have similarly failed to establish that a "false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services." *See* N.M. STAT. ANN. § 57-12-2D. Any failure to repair the property after the fire occurred well after the sale of the policy, the purchase of which the Costanzos played no role. The Costanzos may not bring a UPA claim on the basis of the alleged failure to repair insured property and the communications following the fire, as they fail to establish any false or misleading representation in connection with the sale of the policy. On these grounds, I grant summary judgment to Hartford as to the UPA claim and dismiss the claim with prejudice.

## CONCLUSION

Based on the policy Mortgage Clause, Declaration Page, and other evidence, I find unpersuasive Hartford's argument that the Costanzos do not have a right to bring a claim under the UIPA as insureds. I therefore DENY summary judgment on the UIPA claim. However, I find that the Costanzos have failed to establish an essential element of a UPA claim. I therefore GRANT summary judgment to Harford as to the UPA claim and dismiss the claim with prejudice.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.