IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ALFRED COSTANZO and
MELANIE COSTANZO,

      Plaintiffs,

v.                                                                                          CV 13-1199 WPL/RHS

PROPERTY & CASUALTY INSURANCE
COMPANY OF HARTFORD,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

      Property & Casualty Insurance Company of Hartford ("Hartford") filed a Motion for Partial Summary Judgment on Plaintiffs' Insurance Bad Faith and Punitive Damages Claims (Doc. 50) and a Motion for Partial Summary Judgment on Damages (Doc. 51). Hartford argues that Alfred and Melanie Costanzo's ("the Costanzos") damages, if any, are limited to the difference between the mortgage indebtedness and the proceeds of the foreclosure sale. (Doc. 51 at 1.) Further, Hartford argues that it is entitled to partial summary judgment on the Costanzos' bad faith and punitive damages claims because the Costanzos have submitted no evidence to support their allegations of bad faith. (Doc. 50 at 1.) The Costanzos filed responses (Docs. 52-53), and Hartford filed replies one day late (Docs. 55, 58). Despite the late replies, I considered them because they did not prejudice either of the parties or provide a strategic advantage. *See Lane v. Page*, 250 F.R.D. 634, 642 (D.N.M. 2007). Based on a review of the briefing, the record, and the relevant law, I grant Hartford's Motion for Partial Summary Judgment on Damages

(Doc. 51) and deny Hartford's Motion for Partial Summary Judgment on Plaintiffs' Insurance Bad Faith and Punitive Damages Claims (Doc. 50).

## FACTUAL & PROCEDURAL BACKGROUND

The factual and procedural background found in the record and all reasonable inferences from them are presented in the light most favorable to the Costanzos. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). In 1998, the Costanzos financed the sale of the house located at 242 Vermont St. NE, Albuquerque, NM 87108, to Theresa K. Hamill and James P. Hamill ("the Hamills"), subject to a mortgage. Hartford issued a homeowners insurance policy, No. 55 RBC358006, effective September 1, 2011, to September 1, 2012. The named insureds on the policy were the Hamills. On or about December 27, 2011, a fire occurred in the house, causing damage to the property.

A Hartford claims adjuster visited the house on January 5, 2012, to assess the damage caused by the fire. The house was in severe disrepair. It contained mold, had no working toilet, and was filthy, infested with pests, and covered with trash and other items such that one could not safely walk through the house. Hartford paid to have debris removed from the house in order to allow a safe walk-through to assess the damage from the fire on January 26, 2012. By February 1, 2012, Hartford paid the Hamills for the damage caused by the fire. The Hamills disputed the amount paid for the fire damage, but they subsequently failed to provide estimates or other evidence of damage required by the insurance policy.

The Hamills failed to repair or authorize any repairs to the house to address the damage caused by the fire. The Hamills stopped making mortgage payments to the Costanzos on February 1, 2012, and moved out of the house around the same time. The Costanzos did not become aware of the Hartford policy or of Hartford's investigation into the Hamills' claim until

late March or early April 2012. Mr. Costanzo contacted Hartford on April 5, 2012, and learned from Hartford agent Rudy Ramos that Hartford had paid the Hamills for the fire damage and closed the file for the house. Although Hartford later reopened the file, there was a several-month delay in doing so. Meanwhile, the house continued to suffer further damage from exposure to the elements and vandalism.

The Costanzos filed a foreclosure action against the Hamills on September 26, 2012. On February 27, 2013, a judgment was entered in favor of the Costanzos against the Hamills for $70,672.80, plus interest of $2,797.46 and $1,952 in attorneys' fees and costs. A foreclosure sale took place on April 16, 2013. The Costanzos submitted the sole bid, for $50,000, and acquired the property on May 7, 2013.

Hartford provided the Costanzos with a Proof of Loss form, which the Costanzos completed on July 8, 2013. The Costanzos asserted a claim for $95,867.60, based on an estimate by their expert, Stacey Seidel, of the cost required to make the home livable again. The estimate included amounts for repairs necessary for reasons other than the fire, in addition to amounts associated with the fire.

The parties continue to dispute whether the Costanzos were named mortgagees on the policy, with the Costanzos arguing that they were named mortgagees. (*See* Docs. 34, 38, 43.)

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of "showing that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the nonmoving party must identify specific facts that

show the existence of a genuine issue of material fact requiring trial on the merits. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Id.* A mere "scintilla" of evidence is insufficient to successfully oppose a motion for summary judgment. *Id.* at 252. The record and all reasonable inferences therefrom must be viewed in the light most favorable to the nonmovant. *See Muñoz*, 221 F.3d at 1164. In a case such as this, where the burden of persuasion at trial would be on the nonmovant, the movant can meet Rule 56's burden of production by either (1) providing affirmative evidence negating an essential element of the nonmovant's claim or (2) showing the Court that the nonmovant's evidence is insufficient to demonstrate an essential element of the nonmovant's claim. *Celotex*, 477 U.S. at 331 (citations omitted).

## DISCUSSION

### I. Motion for Partial Summary Judgment on Damages (Doc. 51)

Hartford argues that it is entitled to partial summary judgment on the theory that the Costanzos' damages, if any, are limited to the deficiency between the total indebtedness on the mortgage and the proceeds from the foreclosure sale. Hartford notes that the total indebtedness at the time of the default judgment was $75,422.26 and that the Costanzo's purchased the property at the foreclosure sale for $50,000. As such, the deficiency amounts to $25,422.26.

The Costanzos do not dispute that "the amount of their claim for compensatory damages under the Hartford policy is the difference between the total amount owed under the Hamill/Costanzo mortgage, including interest, attorney fees, etc., and the $50,000[] that the

Costanzos bid to obtain title to the insured premises at the foreclosure sale." However, the Costanzos argue that this limitation on compensatory damages under the policy does not preclude their extra-contractual claims, including for bad faith and punitive damages, or claims for pre- or post-judgment interest on any compensatory damages awarded.

Hartford notes the Costanzos' concession regarding the limitation of compensatory damages under the policy. However, Hartford states, without explanation, that this concession also precludes recovery of extra-contractual claims for insurance bad faith and punitive damages. Hartford alludes that it will address the bad faith and punitive damages claims in its other partial motion for summary judgment.

Upon review of the briefing and the lack of dispute between the parties, I find the motion to be well taken, and I GRANT partial summary judgment in favor of Hartford. It is hereby ordered that compensatory damages under the Hartford policy are limited to the difference between the total indebtedness on the mortgage and the proceeds from the foreclosure sale.

II. **Motion for Partial Summary Judgment on Plaintiffs' Insurance Bad Faith and Punitive Damages Claims (Doc. 50)**

Hartford argues that the Costanzos have provided no evidence to support bad faith, and that Hartford is therefore entitled to partial summary judgment on the Costanzos' bad faith and punitive damages claims. Specifically, Hartford contends that its conduct was not "frivolous or unfounded." (Doc. 50 at 6.) Hartford summarizes its interactions with the Hamills, from setting up the initial inspection of the house, to preparing a cost estimate, to paying the Hamills for the damages.

Hartford then discusses its actions with respect to the Costanzos. Hartford asserts that the Costanzos were not named as mortgagees under the policy and therefore Hartford may not be faulted for not including the Costanzos in the payment of damages. Hartford provided the

Costanzos with a Proof of Loss form, which the Costanzos completed, but through which the Costanzos included a cost estimate by their expert as to the figure necessary to restore the house to livable condition rather than just to cover the fire damages. Hartford also points to the Costanzos' complaint, which states that "Hartford's failure and refusal to take steps necessary to repair such fire loss and to meet its obligations under the Policy have been in bad faith," explaining that it is undisputed that Hartford had no authority to authorize repairs to the house. (Doc. 50 at 8.) Hartford submits as well that there is no evidence that vandalism or other damage occurred due to delay by Hartford, as Hartford inspected and photographed the home in January 2012, and Hartford had a genuine basis for desiring to separate the actual fire damages from the Costanzos' claim. Finally, Hartford contends that because there is no evidence of bad faith, the Costanzos' punitive damages claim must also fail.

The Costanzos clarify the grounds upon which their bad faith and punitive damages claims are based:

> (1) Hartford[] paid the Hamills for the fire damage caused to the home . . . even though the Hartford policy plainly provided that such payment should be made to the mortgagee on the property, and not to the Hamills; (2) that Hartford, based upon that payment to the Hamills apparently considered the case closed[;] (3) even when Hartford agreed to reopen the file, it took Hartford months to provide Mr. Costanzo with a copy of the policy and to consider the Costanzos' claims. Indeed, to this day, Hartford continues to deny that the Costanzos are insureds under the policy. During the period of this substantial delay, the home suffered additional damages due to exposure to the elements, vandalism, etc.

(Doc. 53 at 1.)

The Costanzos point out that the mortgage clause of the Hartford policy states, "If a mortgagee is named in this policy, any loss payable . . . will be paid to the mortgagee and you, as interests appear." (Doc. 53 at 2; Doc. 48 Ex. 1 at 64.) Further, the declarations page of the policy lists the mortgagee as Loan No. 1000295980, Weststar Escrow, P.O. Box 26400, Albuquerque,

NM 87125. (Doc. 53 at 2; Doc. 48 Ex. 1 at 3.) The Costanzos note this Court's prior finding that "[a]ny investigation into the escrow account number would reveal the Costanzos as the mortgagees on the policy." (Doc. 53 at 2 (citing Doc. 49 at 7).) It is undisputed that Hartford paid only the Hamills for the fire damage, rather than providing a check with both the Hamills' and Costanzos' names.

Mr. Costanzo submits an affidavit signed under penalty of perjury. (Doc. 53 Ex. 1.) He states that even though Hartford eventually agreed to reopen the claim file, there was "considerable delay in doing so." (*Id.* at 2.) Mr. Costanzo states that, despite repeated requests, he did not receive a copy of the insurance policy until August 2012; nor did Ramos ever inform the Costanzos of the amount paid to the Hamills, even though Mr. Costanzo repeatedly asked for this number. As such, there was a several-month delay before Hartford addressed the claim.

The Costanzos assert that the issue of bad faith is generally a question of fact to be determined by the jury, and they contend that there is substantial evidence upon which a jury could find bad faith. The Costanzos state, "If Hartford is not willing today to acknowledge the Costanzos' rights as mortgagees under the Hartford policy, the Court can imagine the frustration Mr. Costanzo had in trying to get Hartford to recognize the Costanzos' rights under the Policy." (Doc. 53 at 7.) They also submit that the question before the Court is not the extent of the damages caused by Hartford, but rather whether there is any evidence of bad faith. Furthermore, a finding of bad faith typically supports punitive damages. (Doc. 53 at 8.)

Hartford argues that the Costanzos have attempted in their response to "create the illusion of an issue of material fact where there is none." (Doc. 58 at 1.) It contends that there is no provision in the policy requiring Hartford to have paid the mortgagee rather than the Hamills. Further, Hartford argues that even if it should have disbursed the payment to the Costanzos as

7

well, partial summary judgment is not precluded because there is a difference between erroneous or incorrect actions versus those that are unfounded or done with reckless disregard. As to the closure of the file, Hartford asserts that the closure was not "false, misleading, frivolous or unfounded," and that the file was reopened when the Costanzos filed their claim. (Doc. 58 at 5.) With respect to a delay in processing the Costanzos' claim generally, Hartford asserts that it is not at fault because there was a valid dispute over the value of the claim. Further, Hartford criticizes the Costanzos for purportedly shifting their claim from the calculation of fire damages provided to the Hamills to the handling of the Costanzos' own claim for the same damages. Hartford continues to assert that the Costanzos' names did not appear in the policy. It contends that if the Costanzos (or Weststar Escrow) should have been included in the payment for the fire damage, such might constitute a claim under the policy, but not evidence of bad faith. Hartford asserts that even if it had paid the Hamills and Costanzos together for the fire damage, the "critical dispute" over whether Hartford must pay to make the home livable again would remain. (Doc. 58 at 9.) Hartford argues that it cannot be found in bad faith for failing to pay the Costanzos for damages not associated with the fire.

In New Mexico, "an insurer who fails to pay a first-party claim has acted in bad faith where its reasons for denying or delaying payment of the claim are frivolous or unfounded." *Sloan v. State Farm Mut. Auto. Ins. Co.*, 85 P.3d 230, 236 (N.M. 2004) (citing *State Farm Gen. Ins. Co. v. Clifton*, 527 P.2d 798, 800 (N.M. 1974)). "Frivolous or unfounded" is defined as "an arbitrary or baseless refusal to pay, lacking any support in the wording of the insurance policy or the circumstances surrounding the claim." *Id.* at 237. Further, "'unfounded' . . . does not mean 'erroneous' or 'incorrect'; it means essentially the same thing as 'reckless disregard,' in which the insurer *utterly* fail[s] to exercise care for the interests of the insured in denying or delaying

payment on an insurance policy." *Id.* (emphasis in original) (quotation omitted). As cited in *Sloan*,

> [a]n insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy. In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation and evaluation of the claim. A failure to timely investigate, evaluate or pay a claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract."

*Id.* at 233 (citing NMRA, Civ. UJI-13-1702).

Reckless disregard also "supports a claim for punitive damages." *Id.* at 237. The New Mexico Supreme Court has found that a punitive damages instruction should be provided to the jury when there is evidence to support a finding that "the insurer failed or refused to pay a claim for reasons that were frivolous or unfounded." *Id.* at 232-34. Yet because New Mexico UJI 13-1702 also includes reasonableness language suggesting that a failure to act reasonably may be sufficient to establish bad faith, the court has clarified that a culpable mental state is required for an award of punitive damages. *Id.* at 236.

In the Tenth Circuit, the Court must determine whether a reasonable jury could find, based on the evidence presented, that the insurer did not act in good faith. *See Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436-37 (10th Cir. 1993). More specifically, a bad-faith question reaches a jury only after the Court decides that "the relevant facts are in dispute or . . . the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Yumukoglu v. Provident Life & Accident Ins. Co.*, 131 F. Supp. 2d 1215, 1226 (D.N.M. 2001). Summary judgment is "warranted on a bad faith claim when the insurer has a reasonable basis for its decision to deny benefits." *Id.* (citing *Oulds*, 6 F.3d at 1436-37).

In cases such this, that involve allegations of bad-faith delay by an insurance company, delay is acceptable by reason of "a reasonable investigation of the claim," including taking

appropriate time to ascertain the correct recipient of insurance proceeds. *Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 293 P.3d 954, 958 (N.M. Ct. App. 2013) (citing *Clifton*, 527 P.2d at 800)). In *Clifton*, the insurer had filed an interpleader action to determine who, among several parties, was entitled to certain insurance proceeds. 527 P.2d at 799. One of the parties later filed a counterclaim for punitive damages, which the court dismissed because the insurer took reasonable time and steps to determine entitlement to the proceeds. *Id.* at 799-800. In *Oulds*, the court found reasonable an insurer's delay in processing the plaintiff's medical claims where records indicated that plaintiff had not disclosed substantial medical history, indicating a pre-existing condition, in her application. 6 F.3d at 1438-39.

However, in *Filasky v. Preferred Risk Mut. Ins. Co.*, 734 P.2d 76, 82 (Ariz. 1987), the court concluded that the jury's finding that the insurer acted in bad faith was supported by the evidence. Specifically, the court found evidence that the insurer's long delays in settling the plaintiff's three claims occurred because the insurer either took a groundless position or failed to adequately investigate its position on the claims. *Id.* The court outlined actions the insurer should have taken in a timely manner to settle each of the three claims. *Id.* Further, the court noted that because the amount of coverage, rather than coverage itself, was disputed, the insurer had a duty to promptly pay that portion of the claim that was not disputed. *Id.*; *see also Borland v. Safeco Ins. Co. of Am.*, 709 P.2d 552, 557 (Ariz. Ct. App. 1985) (citing *Olson v. Rugloski*, 277 N.W.2d 385 (Minn. 1979); *Parrett v. Commercial Union Ins. Co.*, 512 F. Supp. 1074 (E.D. La. 1981)).

I recognize that Hartford and the Costanzos dispute what is covered by the policy with respect to the Costanzos. I also note that the Costanzos alleged in their complaint that the amount Hartford has offered to pay for the fire damage "has consistently been unreasonable." (Doc. 1 Ex. 1 at 3.) Despite disputes over the scope and the amount of coverage, which could form a

reasonable basis for a delay in payment pursuant to the policy, Hartford appears to be missing some essential points unrelated to scope and coverage. Hartford continues to emphasize that it quickly assessed the fire damage to the house and paid the Hamills for the damage, and it insists that there is no provision in the policy requiring it to have paid the Costanzos. Even after this Court's extensive discussion of the mortgage clause and declarations page of the policy in a prior order (*see* Doc. 49), Hartford continues to insist that the Costanzos were not named insureds under the policy and that Hartford was therefore not at fault for failing to include the Costanzos as loss payees for the fire damage.

Where an insurer is required to pay a mortgagee pursuant to the mortgage clause, and the insurer erroneously fails to pay the mortgagee and instead pays only the mortgagor, the insurer is subject to double liability under the mortgage clause. *Cont'l Mortg. & Equity Trust v. Meridian Mut. Ins. Co.*, 969 F. Supp. 460, 463 (E.D. Mich. 1997). The mortgage clause in the Hartford policy clearly states, "If a mortgagee is named in this policy, any loss payable . . . will be paid to the mortgagee and [the policyholder], as interests appear." (Doc. 48 Ex. 1 at 64.) As previously stated by this Court, "Any investigation into the escrow account number would reveal the Costanzos as the mortgagees on the policy." (Doc. 49 at 8.) Whether Hartford promptly paid the Hamills for the fire damage is not relevant to Hartford's treatment of the Costanzos, who never saw any of the money paid to the Hamills.

While Hartford counters that it reopened the insurance file for the house, Hartford has failed to account for the many months that passed before the file was reopened. Although neither the record nor Mr. Costanzo's affidavit offers precisely when the file was reopened, the affidavit states that Mr. Costanzo did not even receive a copy of the Hartford policy until August 2012— four months after Mr. Costanzo first spoke with agent Ramos, and after repeated requests for the

policy. (Doc. 53 Ex. 1 at 2.) Further, the affidavit reflects that, also despite repeated requests, Mr. Costanzo still does not know how much Hartford paid the Hamills or on what basis. (*Id.*) Hartford does not contest these facts; nor does it attempt to explain the delay in providing the policy to the Costanzos and reopening the file. Hartford only discusses the later delays—associated with the scope and valuation of the claim—after the house had been sitting vacant for many months.

This is not a case with multiple possible claimants, potential misrepresentations by the applicants, or an especially complicated file. Had Hartford promptly provided a copy of the policy, reopened the insurance file, and addressed the Costanzos' claim, there would be no evidence to support a bad faith claim on the basis of a delay in considering the claim. While the present record does not reflect the specific reasons for Hartford's delay, "the undisputed facts permit differing inferences as to the reasonableness and good faith of [Hartford's] conduct." *Yumukoglu*, 131 F. Supp. 2d at 1226. I therefore conclude that a reasonable jury could find that Hartford acted unreasonably and/or in bad faith by delaying the review of the Costanzos' claim for reasons that were frivolous or unfounded. As such, I DENY partial summary judgment as to the Costanzos' bad faith and punitive damages claims.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.